CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 0 3 2011

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LAWRENCE JOHNSON, | ) |
| | ) Civil Action No. 7:09cv00165 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) MEMORANDUM OPINION |
| TERRY O'BRIEN, et al., | ) |
| | ) By: Hon. James C. Turk |
| Defendants. | ) Senior United States District Judge |

Plaintiff Lawrence Johnson, a federal inmate proceeding pro se, brings this civil rights action under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), with jurisdiction vested under 28 U.S.C. § 1331. In his complaint, Johnson alleges that the defendants, federal prison officials, used excessive force against him, denied him adequate medical treatment, were deliberately indifferent to various hazardous living conditions, and retaliated against him for filing grievances, in violation of the Eighth Amendment. The defendants filed a motion to dismiss, or in the alternative a motion for summary judgment, and Johnson filed an opposition brief, making the matter ripe for decision. The Court denies defendant's motion as to Johnson's excessive force claim against Officers Taylor and Welch arising from the September 21, 2007, use of force. However, the Court will dismiss all of Johnson's remaining claims.

I. Procedural History

On January 10, 2008, Johnson filed a prior complaint, Civil Action No. 7:08-cv-00022, alleging the defendants used excessive force against him, denied him adequate medical treatment, and were deliberately indifferent to various hazardous living conditions, in violation of the Eighth Amendment. This Court found in that earlier action that Johnson's September 21,

2007, excessive force claim against Defendants Taylor and Welch and September 21, 2007, deliberate indifference to serious medical need claim against Defendant Amanda Rutherford[1] may go forward, and the remainder of his claims must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief may be granted. With respect to these remaining excessive force and deliberate indifference claims against Taylor, Welch, and Rutherford, this Court in Civil Action No. 7:08-cv-00022 dismissed the action without prejudice on grounds that Johnson failed to exhaust his available administrative remedies before filing suit.

On May 8, 2009, Johnson filed the complaint in this suit (Civil Action No. 7:09-cv-00165, Dkt. No. 1) against the same defendants based on the same series of events. Johnson has added new relevant facts to some of his claims to this complaint, but other claims in Johnson's complaint are a verbatim copy of his previous complaint. The defendants have filed a motion to dismiss, or in the alternative, a motion for summary judgment.

## II. Factual Background

Johnson's claims are based on the following alleged sequence of events at the United States Penitentiary in Lee County, Virginia ("USP Lee"). On June 26, 2007, Johnson complained to Officer Taylor about being placed in a cell in which the toilet and floor were covered with human excrement. He asked Taylor to flush his toilet, but the officer refused. Shortly thereafter, Johnson activated the sprinkler in the cell in order to force the officers to move him to a clean cell.

Lt. Trees called for a force team to move Johnson to a dry cell. In the new cell, Lt. Trees allegedly had Johnson stripped by four officers and watched by at least five other officers and an inmate. In his complaint filed on January 10, 2008, and his verified statement filed February 4,

---

[1] Amanda Rutherford was previously known as Amanda Bishop. (Rutherford Decl., ¶ 2, Ex. 6 to Mot. to Dismiss, Dkt. No. 55).

2008, Johnson only mentions male officers being present at the time and does not allege the presence of any females. After the Court dismissed this claim for failure to state a claim, Johnson, in his second complaint, alleged the same facts but added that a female was present without alleging any specific facts to support his claim that he believed a female was present at the time. Johnson also alleges that the officers placed leg shackles, a belly chain, and a "black box" on him for at least six hours.

Johnson alleged that the new cell smelled of feces and urine and had no bed, toilet, or running water. He remained in this cell for three days and was forced to relieve himself in a plastic bag. As a result of this incident, he suffered muscle strain and swollen wrists from the tight cuffs. Johnson also alleges that he was placed on "bag lunch status" and denied his "regular meal" for five days. In his verified statement (Civil Action No. 7:08-cv-00022, Dkt No. 7, p. 3) Johnson claims that this consisted of being given four slices of bread with peanut butter and jelly. In his complaint in this action, Johnson alleges that he was given no food or water during the five day period. Johnson claims he did not eat the entire five days and suffered dizziness, "throwing up mucus, shrunkin [sic] stomach."

On September 27, 2007, while Johnson was in the non-contact visitation booth with his wife, Officer Taylor opened the door and watched them for about 30 seconds before declaring that their visit was terminated. Johnson alleges he walked to the toilet to urinate, and Taylor grabbed him behind his neck and shoulder, ramming is head twice against the concrete wall. Taylor and Officer Welch then began striking Johnson in the back and ribs "with what felt like closed fists." Taylor then allegedly placed cuffs on Johnson's writs so tightly that his right hand began to swell and he could not feel his fingers. As a result of the alleged excessive force employed by Defendants Taylor and Welch, Johnson claims that he suffered a swollen forehead,

3

sore ribs, lower back pain, a swollen wrist, occasional headaches, shortness of breath requiring an asthma pump, and has urinated blood.

Defendants Taylor and Welch present a starkly different picture of what transpired the night September 21, 2007. Defendant Taylor contends that he arrived at the visiting room at 8:15 p.m. to escort Johnson back to the Special Housing Unit, where Johnson resided. (Taylor Decl., ¶ 4, Ex. 3 to Mot. to Dismiss, Dkt. No. 55). Johnson responded in an agitated voice that he had five minutes left of the visit. (Id., ¶ 5). At approximately 8:20 p.m., and after several direct orders to stand up, Johnson approached Defendant Taylor in an aggressive manner, stating that he needed to use the restroom. (Id., ¶ 7). Because prisoners residing in the Special Housing Unit are required to be placed in hand restraints when transported within the prison, Taylor ordered Johnson to submit to hand restraints. (Id., ¶ 8). Johnson refused, instead brushing against Defendant Taylor with his shoulder as Johnson walked by. (Id., ¶ 9). Defendant Taylor again ordered Johnson to submit to hand restraints, which Johnson ignored. (Id., ¶¶ 10-11). According to Defendants Taylor and Welch, as well as Officer Quinn, the three officers then placed Johnson against the wall and secured him with hand restraints. (Id., ¶¶ 12-13; Welch Decl., ¶¶ 9-10, Ex. 4 to Mot. to Dismiss; O'Quinn Decl., ¶ 8-9, Ex. 5 to Mot. to Dismiss). Defendant Taylor denies slamming Johnson's head against the wall, but acknowledges that his "head may have hit the wall during the struggle, [though] it was not an intended result of the use of force." (Taylor Decl., ¶ 16-17. See also Welch Decl., ¶ 14; O'Quinn Decl., ¶ 12). Defendant Taylor, Welch, and O'Quinn all attest that the officers used an appropriate level of force and that Johnson was not punched in the back or and ribs by any officer. (Taylor Decl., ¶¶ 12, 14-16, 18, 20, 22; Welch Decl., ¶¶ 9, 11-14; O'Quinn Decl., ¶¶ 8, 10-12).

Johnson told Nurse A. Bishop that he had been assaulted by Taylor and Welch and "needed immediate medical attention." Johnson states that Bishop waited thirty minutes to come to Johnson's cell and evaluate him. He states that he told her about his injuries, but he has put forth no evidence that he actually told her what injuries he had allegedly suffered. Johnson alleges that she did not take him out of his cell to evaluate his injuries and provided him no pain medication.

Defendant Rutherford agrees that she evaluated Johnson through his cell door. According to Defendant Rutherford, Johnson only complained of pain in his right wrist, and that there was a small red area on that wrist where the hand restraints had been. (Rutherford Decl., ¶¶ 8, 10, Ex. 6 to Mot. to Dismiss, Dkt. No. 55). Defendant Rutherford also observed a one centimeter raised round area on Johnson's forehead. (Id., ¶ 11). Defendant Rutherford noted these injuries on a prisoner injury assessment form, provided Johnson with a packet of ibuprofen, and instructed him to follow up with medical staff as needed. (Id., ¶¶ 12, 14-15). In addition, Defendant Rutherford reviewed Johnson's medical records from the date of the incident until summer 2008. (Rutherford Decl., ¶ 16). She found that Johnson did not seek any medical attention after the September 21, 2007 incident until November 13, 2007 when he submitted a request at United States Penitentiary in Terre Haute, Indiana ("USP Terre Haute")[2] to have his teeth cleaned. (Id., ¶ 17). On December 7, 2007, Johnson complained of rib pain, but X-rays taken a week later were normal. (Id., ¶¶ 18-19). Defendant Rutherford also states that Johnson was medically evaluated "several times prior to December 7, 2007, [but] did not complain of any rib or back pain." (Id., ¶ 20). On January 15, 2008 Johnson complained of ailments including lower back pain. (Id., ¶¶ 22-23). Johnson admits that he received access to medical personnel,

---

[2] Johnson was transferred from USP Lee County to USP Terre Haute sometime in fall 2007 after the September 21 incident.

5

even though he believes his thirty minute wait to be evaluated was inappropriate. Also, he does not dispute the fact that he was medically evaluated many times between September 21 and December 7, 2007, and therefore, had the opportunity to report injuries to medical staff.

Johnson further claims his Due Process rights were violated when officers retaliated against him for filing complaints. Johnson alleges that various officers committed retaliatory acts against him including finding him guilty of charges that should have been expunged, issuing "bias[ed] an inconsistent UDC and UHO decisions," transferring him "more than 900 miles away from home," stealing his property, and writing false incident reports. Johnson also claims that he was denied visitation privileges.

### III. Johnson's Claims

Johnson's claims are made under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). In Bivens, the Supreme Court held that damage suits could be maintained against federal officials for violations of the Constitution. Id. at 392. An action under Bivens is almost identical to an action under 42 U.S.C. § 1983, except that the former is maintained against federal officials for violation of constitutional rights, while the latter is against state officials. See Carlson v. Green 446 U.S. 14, 24-25 (1980). Case law involving § 1983 claims is applicable in Bivens actions and vice versa. See Farmer v. Brennan, 511 U.S. 825 (1994).

#### A. Res Judicata

The government contends that Johnson's claims should be dismissed pursuant to the doctrine of res judicata. The Court declines to do so, however, because the Court's previous dismissal without prejudice does not constitute a final judgment on the merits for the purpose of

res judicata. The doctrine of res judicata "precludes the assertion of a claim after a judgment on the merits in a prior suit by parties or their privies based on the same cause of action." V.N. Meekins, L.A. v. United Transp. Union, 946 F.2d 1054, 1057 (4th Cir. 1991). In order to invoke res judicata, the invoking party must establish: "(1) a judgment on the merits in a prior suit resolving (2) claims by the same parties or their privies, and (3) a subsequent suit based on the same cause of action." Aliff v. Mfg. Co., 914 F.2d 39, 43 (4th Cir. 1990).

The Court did not make a final judgment on the merits on any of Johnson's claims in his previous suit. In Johnson's previous suit, Civil Action No.: 7:08-cv-00022, the Court dismissed all of Johnson's claims, except for the two claims stemming from the September 21, 2007, incident, without prejudice (Dkt. No.: 21). A dismissal without prejudice is not a decision on the merits for purposes of res judicata. Millville Quarry, Inc. v. Liberty Mut. Fire Ins. Co., 2000 U.S. App. LEXIS 17495, n.4 (4th Cir. 2000) (unpublished). Therefore, Johnson's claims that were previously dismissed pursuant to § 1915A will not be dismissed pursuant to the doctrine of res judicata.

B. Failure to State a Claim under 28 U.S.C. § 1915A

The Court may dismiss a claim by a prisoner against a governmental entity under 28 U.S.C. § 1915A(b)(1) if the claim "is frivolous, malicious, or fails to state a claim upon which relief can be granted." The standard for whether a complaint states a claim under § 1915A(b)(1) is equivalent to the standard for stating a claim under Federal Rule of Civil Procedure 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007)). While reiterating that "detailed factual allegations" are not required, the Supreme Court has specified that pleadings which merely offer "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" are not sufficient. Id. The Court concludes that four of Johnson's claims fail to state a claim, and therefore, are dismissed under § 1915A(b)(1).

1. June 26, 2007: Use of Restraints Constituting Excessive Force

The Eighth Amendment prohibits prison officials from using force unnecessarily and wantonly to inflict pain on prisoners. Whitley v. Albers, 475 U.S. 312, 319 (1986). When considering a prisoner's Eighth Amendment claim, the Court must consider a dual inquiry: (1) the objective nature of the force used and the resulting harm and (2) the subjective intent of the officers. Hudson v. McMillian, 503 U.S. 1, 8 (1992). The objective component of the inquiry is "contextual and responsive to 'contemporary standards of decency.'" Id. (quoting Estelle, 429 U.S. at 103). However, "when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Id. at 9. Thus, the core judicial inquiry turns on whether the force applied by the prison officials was "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 6-7. In making this determination, the Court must balance such factors as the need for the application of force, the relationship between the need and the amount of force actually applied, and the extent of injury inflicted. Id. at 7.

While the United States Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim," this does not mean the extent or absence of serious injury is irrelevant. Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010). Instead, the extent of injury suffered is just one factor to account for in the analysis, "but does not end it." See Hudson, 503 U.S. at 7 ("The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it."). The extent of injury may also provide some indication of the amount of force applied. Wilkins, at 1178. The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force. Id. An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Id.

Johnson's allegations regarding the use of restraint on June 26, 2007, do not rise to a constitutional claim. He admits that he activated the sprinkler in his cell, which damaged prison property. In light of this destructive and defiant action, the Court cannot find that the officials' use of full restraints, a waist chain, and black box for six hours was disproportionate to the need to restore order. Also, placing Johnson in an empty cell for several days was not disproportionate to the need to restore order. Such restraints and conditions were needed to ensure that Johnson was unable to destroy additional government property. Furthermore, Johnson's alleged injuries are de minimus. At most, he suffered muscle strain and swollen wrists for a short time as a result of the restraints, and he never sought medical attention for the injuries. Such minor injuries, though not conclusive, indicate that prison officials only used de minimus force, which was necessary to restore order and quell Johnson's defiant, destructive behavior.

See Wilkins, at 1178. Therefore, the Court will dismiss Johnson's Bivens claim regarding the use of restraints on June 26, 2007, pursuant to § 1915A(b)(1) for failure to state a claim.

2. June 2007: Cruel Conditions of Johnson's Empty Cell

The Eighth Amendment protects prisoners from cruel and unusual living conditions that are "totally without penological justification." Rhodes v. Chapman, 452 U.S. 337, 346 (1981). In order to state a claim of constitutional significance regarding prison conditions, a plaintiff must allege facts demonstrating that the challenged conditions resulted in a deprivation of a basic human need that was objectively "sufficiently serious" and (2) that, subjectively, the defendant prison officials acted with a sufficiently "culpable state of mind" with regard to these conditions. Wilson v. Seiter, 501 U.S. 294, 298 (1991). To satisfy the objective element of a conditions claim, the plaintiff must show that he has suffered a serious or significant physical or mental injury as a result of the challenged conditions. Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 1993).

Allegations of inadequate prison food service may be sufficient to state a cognizable claim under § 1983 or Bivens, so long as the deprivation is serious. Bolding v. Holshouser, 575 F.2d 461, 465 (4th Cir. 1978); French v. Onion, 777 F.2d 1250, 1255 (7th Cir. 1985) (finding that inmates are entitled to receive nutritionally adequate food). On the other hand, occasional, short-lived problems with prison food service and isolated instances of inmates missing a meal or two do not implicate the Eighth Amendment. See Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) ("The fact that the food occasionally contains foreign objects or is sometimes served cold, while unpleasant, does not amount to a constitutional deprivation.");

Islam v. Jackson, 782 F. Supp 1111, 1114 (E.D. Va. 1992) (finding an inmate's missing one meal as an isolated event did not state an Eighth Amendment claim).

The only one of Johnson's allegations regarding the empty cell that states a constitutional claim under Bivens is his allegation that he was denied food and water for five days. This allegation will not be dismissed for failure to state a claim, and therefore, will be considered infra under the summary judgment standard. All of Johnson's other allegations regarding the empty cell fail to state a constitutional claim. Even though the conditions were harsh, they were only temporary, lasting about three days. The austere conditions were not "totally without penological justification." Johnson had recently damaged prison property and caused disorder in the prison, so there was a reasonable penological justification to temporarily place Johnson in a cell that denied him the opportunity to continue his destructive behavior. Furthermore, Johnson does not allege any suffering or physical injury from being held in the empty cell for a few days, which suggests his temporary housing assignment was not a "sufficiently serious" deprivation of a basic human need. Wilson, 501 U.S. at 298. Therefore, the Court cannot find that any of Johnson's allegations state an Eighth Amendment claim.

3. June 26, 2007: Strip Search

In Bell v. Wolfish, 441 U.S. 520 (1979), the Supreme Court held that inmates may be subjected to body cavity searches in the absence of probable cause so long as the searches were reasonable. Id. at 558. The Court framed the test for reasonableness as follows:

> In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

Inmates have extremely limited expectations of privacy. Lee v. Downs, 641 F.2d 1117, 1119 (4th Cir. 1981). In Lee, a female nurse manually inspected the body cavity of a female inmate while the inmate was restrained by two male guards. Id. at 1120. The Fourth Circuit held that the inmate's constitutional rights were not violated because the search was reasonable due to her disruptive behavior.

Even accepting Johnson's statement that he was strip searched while a female guard was present, which allegation is noticeably absent from all but one of his accounts, Johnson fails to state constitutional claim under Bivens. The alleged search was reasonable under the circumstances. Johnson admits he had recently been moved by the force team from his former cell for activating the sprinkler. His former cell was not empty and could have contained contraband and dangerous materials that Johnson could have used to hurt himself or others or to damage more prison property. The prison officials were not acting unreasonably by strip searching Johnson after he had been in a cell that could have contained dangerous items and was currently displaying destructive and hostile behavior. The fact that a female guard may have been present does not give Johnson a constitutional claim because, in Lee, male guards actively restrained a female prisoner while she was strip searched. Id.

4. Retaliation in Violation of Due Process for Filing Grievances

Claims of retaliation by inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition retaliatory' in the sense that it responds to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). To succeed on his claim, an inmate must allege facts sufficient to demonstrate that the alleged retaliatory act "was taken in response to the exercise of a

constitutionally protected right or that the act itself violated such a right." Adams, 40 F.3d at 75. The inmate must come forward with specific evidence "establish[ing] that but for the retaliatory motive, the complained of incident . . . would not have occurred." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). "Temporal proximity" between the inmate's protected activity and the allegedly retaliatory, official action "is simply too slender a reed on which to rest" a § 1983 retaliation claim. Wagner v. Wheeler, 13 F.3d 86, 91 (4th Cir. 1993). Plaintiff must also demonstrate that he suffered some adverse impact or actual injury, more than mere inconvenience, to the exercise of his constitutional right. ACLU of Md., Inc. v. Wicomico County, Md., 999 F.2d 780, 785 (4th Cir. 1993). Complaints that offer nothing more than conclusory allegations of retaliation may be summarily dismissed. Adams, 40 F.3d at 74. Inmates have no constitutional right to a prison grievance procedure. Id. at 75.

Johnson's allegations fail to state any claim of retaliation under these principles. The Court specifically advised him that he would need to amend his allegations to state the facts on which he based his claims that certain actions against him were taken in retaliation. He states merely that various undesirable actions occurred after the alleged excessive force incident, including false disciplinary charges, a transfer further away from home, no regular meals for a few days, stolen property, and deprivation of visiting privileges. At the most, Johnson alleges, in conclusory fashion, that these adverse events occurred after he filed grievances about the excessive force incidents. In filing grievances, however, Johnson was not exercising a constitutionally protected right, as he has no right to participate in a grievance procedure at all. Moreover, he does not allege any specific facts, other than closeness in time, that would tie the adverse, later events to a retaliatory motive. His conclusory allegations of retaliation must, therefore, be summarily dismissed, pursuant to § 1915A(b)(1).

Similarly, because Johnson has no constitutional right to a prison grievance procedure, his allegations that prison officials interfered with his ability to exhaust his grievance remedies does not state any separate constitutional claim actionable under Bivens. Thus, his claims concerning interference with grievance remedies will be dismissed, pursuant to § 1915A(b)(1).

5. September 21, 2007: Use of Excessive Force and Deliberate Indifference to Medical Need

The Court, in Johnson's previous action, concluded that Johnson's excessive force claim and deliberate indifference claim stemming from the September 21, 2007, incident state a valid constitutional claim. (Civil Action No. 7:08-cv-00022, Dkt. No. 20.) The Court adopts its reasoning from its opinion in the prior case and will consider the excessive force claim against Officer Taylor and Welch and the deliberate indifference claim against Nurse Rutherford under the summary judgment standard.

As to the other officers named in the excessive force claim, however, the Court finds that Johnson's allegations fail to implicate any constitutional rights. He admits that Officer O'Quinn yelled at the other officers to stop the beating and does not allege any other respect in which this officer participated in the alleged assault. He also does not allege any facts indicating that any supervisory officers were present, or knew of, encouraged, or in any way approved the alleged actions of Taylor and Welch. See Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999) (finding that a supervisory official may be liable for acts of subordinates only if personally involved in some specific respect with the violation). Accordingly, all claims against officers other than Taylor and Welch, related to the September 21, 2007 incident, are dismissed pursuant to § 1915A(b)(1).

## C. Summary Judgment under Rule 56

Upon motion for summary judgment, the Court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in her favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).

### 1. June 2007: Denial of Food and Water for Five Days

Johnson's claim that he was denied food and water for five days cannot survive summary judgment because he previously admitted that he was given food during the five days in question. Inmates are entitled to nutritionally adequate food, <u>French</u> 777 F.2d at 1255, and a <u>Bivens</u> claim may be maintained if there is a <u>serious</u> deprivation of this right. <u>Bolding</u>, 575 F.2d at 465. Although Johnson alleges that he was denied food for five days, he admits in a verified statement that he was given "bag lunches" consisting of peanut butter and jelly sandwiches and water. (Civil Action No. 7:08-cv-00022, Dkt No. 7, p. 3; Civil Action 7:09-cv-00165, Dkt No. 59-1, p.4.) Taken in a light most favorable to the plaintiff, no reasonable jury would dispute Johnson's own admission. Also, Johnson has provided no evidence to prove that a meal of two peanut butter and jelly sandwiches is nutritionally inadequate. No reasonable jury could find that an occasional meal of two peanut butter and jelly sandwiches is a serious deprivation of the right to nutrition. The case may be different if Johnson were given only this meal on a long-term

basis, such as many months, but in this case, Johnson only alleges that he was denied his "regular meal" for five days. Therefore, taken in a light most favorable to the plaintiff, no reasonable jury could find that Johnson states a claim under <u>Bivens</u> for cruel conditions and serious deprivation of nutritionally adequate food.

2. <u>Indifference to Serious Medical Need</u>

A prison official's indifference to a serious medical need violates the Eighth Amendment. <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 102 (1976). A constitutional claim in this context involves an objective component and a subjective component. The objective component is met if the deprivation is "sufficiently serious." <u>Farmer</u>, 511 U.S. at 834. A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Hunt v. Uphoff</u>, 199 F.3d 1220, 1224 (10th Cir. 1999). The subjective component is met if a prison official is "deliberately indifferent," that is if he "knows of and disregards an excessive risk to inmate health or safety." 511 U.S. at 837; Johnson v. Quinones, 145 F.3d. 164, 168-69 (4th Cir. 1998). A claim concerning a disagreement between an inmate and medical personnel regarding diagnosis and course of treatment does not implicate the Eighth Amendment except in extraordinary circumstances. <u>Wright v. Collins</u>, 766 F.2d 841, 849 (4th Cir. 1985).

Johnson cannot provide evidence sufficient for a reasonable jury to find that (1) Johnson suffered from a sufficiently serious medical condition when he asked for medical treatment, (2) that prison personnel knew of any sufficiently serious condition, or (3) that prison personnel disregarded any excessive risk to his health or safety. First, Johnson only claims that he asked for medical treatment on the night of September 21, 2007, after he was allegedly assaulted by the

guards. Although, in his complaint, he alleges that at some point he urinated blood, he never specifies when this happened or alleges that he requested medical attention for this issue. In fact, Johnson does not allege that he told prison officials about any specific injuries. He only states that he told Nurse Rutherford about "all of my injuries," yet he never alleges that he had any other injuries than swollen wrists and a bump on the head when he saw the nurse. Therefore, no reasonable jury could find that Johnson even had a serious medical condition when he asked for medical attention.

Second, even if Johnson had a serious medical condition, he has no evidence that prison officials and medical staff ever knew that he had any serious medical condition. Again, Johnson does not claim that he told prison officials of any serious medical conditions, so there is no evidence they could have known of any serious medical need. Third, contrary to Johnson's opinion, prison and medical staff did not disregard any excessive risk to his health or safety. Johnson admits that Nurse Rutherford responded to his request for medical attention about 30 minutes after he requested it after the alleged assault. Even if Johnson disagreed with the time in which responded or the manner in which she evaluated his injuries, he received adequate medical attention, and prison staff did not disregard his health and safely.

Johnson's only allegation of deliberate indifference to a serious medical need is based on the September 21, 2007, incident. The uncontroverted evidence is that after September 21, Johnson did not request medical attention again until November 13, 1007, when he asked to have his teeth cleaned. He did not complain of any back or rib pain until December 7, 2007, at which point he was X-rayed, and the X-rays showed that he was normal.

With such lack of evidence that (1) Johnson had a serious medical need, (2) that he ever informed prison staff of his alleged medical need, and (3) that prison staff deliberately

disregarded any significant risk to his health or safety, the Court must find that no reasonable jury could find in favor Johnson and grants the defendant's summary judgment motion as to this claim.

3. September 21, 2007: Excessive Force

The Court finds that there are genuine issues of material fact regarding Johnson's excessive force claim against Officers Taylor and Welch, and therefore, denies defendant's motion for summary judgment as to this claim.

## IV. Conclusion

The Court will dismiss Johnson's claims based on the June 2007 use of restraints, strip search, being housed in an empty cell, and retaliation in violation of Due Process, pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim. The Court will also dismiss Johnson's excessive force claims against all defendants except Officers Taylor and Welch pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim. The Court will dismiss Johnson's claim denial of food and his claim for deliberate indifference of medical needs under Federal Rule of Civil Procedure 56. The Court will deny defendant's motion for summary judgment as to Johnson's claim of excessive force arising from the September 21, 2007, incident and allow that claim to proceed.

The Clerk of Court is directed to send a copy of this memorandum opinion and accompanying final order to plaintiff and counsel of record for defendants.

**ENTER:** This 3rd day of January, 2011.

/s/ James C. Turk
Senior United States District Judge